IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREA L. BROWN,

                      Plaintiff,                      OPINION AND ORDER

  v.

                                                        11-cv-568-wmc

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                      Defendant.

---

      Pursuant to 42 U.S.C. § 405(g), plaintiff Andrea L. Brown seeks judicial review of a final determination that she was not disabled within the meaning of the Social Security Act.  Brown contends that remand is warranted because: (1) Administrative Law Judge Mary M. Kunz failed to address her mental health limitations regarding concentration, persistence, and pace when posing questions to the vocational expert; and (2) ALJ Kunz failed to give proper weight to the opinions of Brown's treating physician.  While the court rejects plaintiff's second challenge, the court agrees that the ALJ erred in formulating a hypothetical based on plaintiff's limitations in concentration, persistence, and pace.  Accordingly, the court will remand this case on the latter basis alone.

FACTS[1]

**A.  Background**

    Plaintiff Andrea Brown applied for Social Security Income on November 8, 2006, claiming disability since September 6, 2004, due to a "crushed" foot / heel, neck fusion, a

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #8.

bulging disc in her neck and neck pain, and left arm nerve damage. (AR 177.)[2] After Brown's application was denied initially and upon reconsideration, plaintiff requested an administrative hearing. ALJ Kunz held a hearing on August 19, 2009, at which plaintiff appeared with counsel. (AR 29-79.) In a decision dated September 30, 2009, the ALJ found plaintiff was not disabled because she could perform sedentary work and there were a significant number of those jobs in the national economy. (AR 17-28.) On July 19, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiffs' request for review. This action followed. (AR 1.)

### B. Relevant Medical Evidence[3]

Brown has a history of right foot and cervical spine problems dating back to a car accident in 2004. On January 19, 2005, Brown had right foot surgery. (AR 337.) In December of 2005, an MRI of Brown's cervical spine also revealed a significant disc protrusion, at C5-6 with marked compression and C6-7 spinal stenosis, and a CT scan revealed multilevel degenerative changes at C4-5, C5-6 and C6-7. (AR 265, 285.) In February of 2006, Dr. Kamal Thapar performed a C5-6 fusion. (AR 287.) In November of 2006 CT scan showed a stable fusion. (AR 285.) An MRI taken in November of 2006, however, revealed a mild disc bulge at C6-7. (AR 287.)

---

[2] In the administrative record, Brown is referred to by her former name, Andrea L. Shanks. For ease of reference, the court refers to plaintiff by her current name.

[3] The court limits its recount of medical evidence to that which is evidence material to Brown's challenges, consistent with the parties' approach.

In March 2007, Brown met with Dr. Larry C. Studt, an Occupational Medicine Specialist, to assess her work limitations. He limited her to light work defined as lifting of 20 pounds occasionally and 10 pounds frequently. (RA 346.) He further limited her to occasional (11-33%) sitting, driving and working waist to shoulder; seldom (1-10%) standing, walking, bending and twisting of the neck, climbing stairs, and working floor to waist; and no squatting/kneeling/crawling; working over shoulder, and jogging/running. (*Id.* at 346-47.) As for her hands, Studt limited Brown to occasional grasping, gripping, twisting and wrist extension; and seldom reaching with outstretching arms, pushing or pulling with hands, and keyboard work. (AR 347.)

### C.  State Agency Review

In January of 2007, Dr. Mina Kordshidi of the State Agency, completed a Residual Functional Capacity ("RFC") form, in which she found Brown limited to light work, lifting 20 pounds occasionally, 10 pounds frequently, and standing and sitting for six of eight hours. (AR 304.) Brown was also limited to occasional reaching. (AR 306.) During the same time period, Frances M. Culbertson, Ph.D., completed a Psychiatric Review Technique ("PRT") form, finding Brown impairments to be "not severe," but checking the boxes for affective disorders and anxiety-related disorders. (RA 311.) Specific, to affective disorders, Culbertson found that Brown had depressive syndrome, including thoughts of suicide. (RA 314.) Culbertson also opined that these mental disorders resulted in mild limitations in restriction of activities of daily living, difficulties

3

in maintain social functioning, and difficulties in maintaining concentration, persistence and pace. (RA 321.) Culbertson found no episodes of decompensation.

In May of 2007, Keith Bauer, Ph.D., completed a Mental RFC Assessment, in which he found that Brown was moderately limited in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances" and "to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonably number and length of rest periods." (RA 363-64.) Bauer also noted moderate limitations in her "ability to accept instructions and respond appropriately to criticism from supervisors," "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "to respond appropriate to changes in the work setting." (RA 364.) Bauer also completed a PRT form, in which he noted depression and anxiety, but categorized Brown as having moderate difficulties in maintaining social functioning and in maintain concentration, persistence, or pace. (RA 367, 370, 377.)

### D. ALJ Hearing
#### 1. Plaintiff Andrea Brown

At the ALJ hearing, Brown described her past educational and employment history, which included computer-related training and employment, as well as a nurse's aide position and stacking veneer in a wood pulp mill. In response to the ALJ's question as to why she had not worked since 2005, Brown responded "I feel the need to lay down

to relieve my [] pain and weakness, and cramping, [] at least twice a day. I can [] hold out if I force myself for long periods. But then, I find later, the next day, I'm paying for it with more pain, [and] more swelling." (AR 35-36.) Brown described pain which starts in her neck, runs down both sides of her neck across her shoulders, and down her arms. (AR 36.) In addition, Brown testified that she has problems walking due to the tendons in the front of her right ankle impinging. (AR 40.) Brown further acknowledged suffering from depression and anxiety, including problems with memory, getting along with others, and with concentration. (AR 42-43.) In response to questioning from her attorney, Brown testified that she also suffers from Addison's Disease, which involves adrenal insufficiency. (AR 50.)

Brown testified that she tends to "fumble and [] drop things," for example dishes. (AR 37.) When questioned by the ALJ, however, she conceded the ability to use silverware to feed herself, use a toothbrush, and put a key in a door and turn the key to open it. (AR 38.) The ALJ also noted Brown's eye makeup, and Brown acknowledged applying it while emphasizing that it took a long time for her to put it on. (AR 39.) Brown stated that she could lift between 25-30 pounds (but not repetitively), stand for about a half an hour at a time, and sit for no more than a couple of hours at a time. (AR 40-41, 53.)

With respect to her mental health, Brown testified that she is not taking medication because it did not work and she doesn't "feel it's the medical community's business" because "[t]hey can't fix me." (AR 45.) To ease her physical pain, Brown uses ice, rest and Hydrocone. (AR 46.)

Brown testified that she lives with her nine-year-old son, and is able to take care of herself in terms of showering and dressing. (AR 48.) She prepares food (but has to rest while doing so), does the grocery shopping and laundry, both with the help of her son, and is able to clean the house, with the exception of vacuuming, which her son does. (AR 49-50, 56.)

### 2. State Medical Expert

Dr. Andrew M. Steiner reviewed the medical record and listed the following medically determinable impairments: obesity; fatigue, generally attributed to Addison's Disease which has been treated with replacement therapy; injuries to neck and right foot sustained in a 2004 motor vehicle accident; back pain, following an injury in 2001; and depression, panic attacks and anxiety, and history of tobacco and alcohol abuse. (AR 60-61.) Dr. Steiner then testified that her Addison's Disease has been treated successfully; her neck surgery was successful, although there are some problems with nearby discs; her back problems do not involve neurological deficits; and her right foot problems do not reach the listing level, specifically noting comments about her normal gait in medical treatment notes. (AR 61-62.)

Based on these physical impairments, Dr. Steiner found that Brown was limited to sedentary work, with lifting in the light range, and only occasional overhead and right foot pedal activities. (AR 62.) In response to questioning by Brown's attorney, Dr. Steiner also noted limitations with continuous neck motions or rotations, but opined that static neck positions should be avoided as well. (AR 63-64.) Steiner dismissed any

limitations with respect to fine or gross manipulation because "I just don't see those kinds of things, at least not on an ongoing basis," specifically noting medical records which described her strength as "grossly normal." (AR 65-66.)

### 3. Vocational Expert

Finally, Richard Titus testified as a vocational expert. The ALJ presented a lengthy hypothetical question describing Brown's age, education and work experience, physical and mental health impairments (consistent with Steiner's opinion), physical limitations (also consistent with Steiner's testimony), and "[b]ecause of mental impairments and the allegations of pain and fatigue, . . . further "restrict[ing] this individual to routine, repetitive, unskilled work, . . . not involv[ing] any public contact." (AR 70-71.) In response, Titus testified that Brown could not perform her past work (1) as a nurse's aide or as a veneer stacker, because both jobs involve "medium" exertional work, or (2) as a computer technician, because that work is skilled, beyond routine, repetitive work. (AR 71.) Still, Titus concluded that she could perform sedentary, unskilled bench work assembly positions, including final assembler, fishing reel assembler, and lampshade assembler, and that there are more than 5,000 of those jobs available in the state of Wisconsin. (AR 72.)

The ALJ then asked if those jobs would allow an individual to take a half hour rest in the morning and again in the afternoon. (AR 72.) In response, Titus testified that one could only reasonably expect a 15 minute break period in the morning and again in the afternoon. (AR 73.) In response to a question about reliable and consistent use of

7

hands and fingers, Titus responded that absent that ability, the jobs identified above would not be available. (*Id.*; *see also* AR 77 (reiterating that the jobs identified all require frequent use of hands for reaching, handling and fingering).) Finally, in response to questions by Brown's counsel, Titus testified that if a person was unable to meet competitive standards for maintaining a work pace, she could not work in the national economy. (AR 77.)

### E.  ALJ Decision

In an opinion dated September 30, 2009, the ALJ evaluated Brown's challenge under the five-step, sequential process. First, the ALJ concluded that Brown had not engaged in substantial gainful activity since November 8, 2006, the application date. Second, the ALJ found the following, severe impairments: "obesity, Addison's disease with resulting fatigue, degenerative disc disease, of the cervical spine with C5-6 fusion, history of calcaneal fracture and tarsal tunnel release on the right, osteoarthritic changes at the ankle, old thoracic compression fracture, depression, anxiety, panic attacks, and history of alcohol abuse." (AR 19.) At step three, the ALJ found Brown does not have an impairment or combination of impairments that meets a listed impairment.[4] At the fourth step, the ALJ determined Brown's RFC "to perform sedentary work . . . , requiring lifting up to twenty pounds occasionally and ten pounds frequently, sitting six hours in an eight-hour day, walking/standing two hours in an eight hour day, with no more than

---

[4] With respect to her mental impairments, the ALJ concluded that she had at most moderate difficulties and no episodes of decompensation. (AR 20-21.)

occasional overhead work, extending reaching beyond eighteen inches from the trunk, or operation of foot pedals, no rotation of the neck continuously and no static neck positions." (AR 22.) The ALJ further restricted Brown to "routine, repetitive, unskilled work not requiring any public contact and no more than brief and superficial contact with coworkers or supervisors." (*Id.*) While the ALJ's finding that this meant Brown could not perform any of her past, relevant work, the ALJ also concluded at step five that Brown is capable of doing other work considering her Residual Functional Capacity ("RFC"), age, education and work experience.

In making these determinations, the ALJ gave "great weight" to the testimony of Dr. Steiner and the opinions of the state agency medical consultants. The ALJ, however, did not give great weight to Dr. Studt, the author of the March 6, 2007, report described above, for several reasons. First, Dr. Studt did not physically examine Brown, but rather spent time reviewing her medical history and daily activities. Based on this, the ALJ inferred that Dr. Studt's conclusions were "based primarily on claimant's subjective assertions of her functional limitations and not on an objective physical examination or treatment relationship." (AR 24.) Second, the ALJ discounted Dr. Studt's opinion because it was inconsistent with Dr. Steiner, and specifically, because it failed to take into consideration objective test results and medical records noting normal strength and gait. Third, the ALJ relied on plaintiff's testimony about her fine motor skills and strength, including her ability to feed herself, brush her teeth, unlock doors, and put on

eye make-up, coupled with Dr. Steiner's testimony of a lack of objective medical evidence to support any fine motor restrictions, to discount Dr. Studt's opinion.[5]

OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision, but engage in a critical review of the evidence. *See Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). A decision cannot stand if it lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Similarly, the ALJ must explain her analysis of the evidence with enough detail and clarity to permit meaningful appellate review. *Id.; Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994). When the ALJ denies benefits, she must build a logical and accurate bridge from the evidence to her conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

---

[5] The ALJ also described the medical records and made certain credibility determination but these findings are not challenged by plaintiff and therefore the court will not recount these findings. (AR 25-26.)

I. **Concentration, Persistence and Pace**

Here, Brown principally contends that the ALJ erred in omitting her moderate limitations in concentration, persistence and pace ("CPP") from the formulation of Brown's RFC. More specifically, consistent with well-established case law in the Seventh Circuit, Brown contends that a limitation to "unskilled tasks that are routine and repetitive" is insufficient to account for CPP imitations, which renders the RFC formulation deficient and, as a consequence, opinions by the vocational expert similarly deficient. *See, e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 617 (7th Cir. 2010) (holding that the ALJ should refer "expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do"); *see also Young v. Barnhart*, 362 F.3d 995, 1003-04 (7th Cir. 2004); *Steward v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Steele*, 290 F.3d at 942.[6]

The Commissioner would have the court distinguish this line of cases, based on Dr. Bauer's finding that despite moderate limitations in concentration, persistence and pace, Brown could "sustain at least unskilled work." (Def.'s Opp'n (dkt. #14) (citing AR

---

[6] While some exceptions apply to this general rule, none apply here. *See O'Connor-Spinner*, 627 F.3d at 619-20 ("(1) where the record revealed that the VE had reviewed the claimant's medical records or heard testimony about the limitations; (2) where the ALJ used alternative phrasing and "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform; or (3) where the ALJ's hypothetical question specifically mentioned the underlying condition that caused the difficulties with concentration, persistence, and pace").

21-22, 363-65, 383).)  At best, Dr. Bauer's report, however, provides no guidance as to whether he linked his conclusion that she would have "difficulty in maintaining pace, motivation and dealing with routine work stresses" with his conclusion that she was "capable of unskilled light work." (AR 383.) At least legally, these may well be two different and independent conclusions. As the Seventh Circuit has explained, "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Conner-Spinner*, 627 F.3d at 620.  As far as the court can tell -- and the Commissioner fails to direct the court -- no medical expert linked or translated limitations in concentration, persistence and pace to "unskilled tasks that are routine and repetitive" set forth in the RFC.  As importantly, the string of hypothetical questions posed to the VE did not provide the CPP limitation, and there is no suggestion that he considered this limitation in concluding that Brown could perform sedentary, unskilled jobs available in Wisconsin.  In fact, when Brown's counsel specifically asked the VE about whether a person who was unable to meet competitive standards for maintaining a work pace could work in the national economy, he responded no.  (AR 77.)

While it may be, as the Commissioner argues, that Dr. Bauer had in mind Brown's CPP limitations in rendering a medical opinion that she was "at least" able to perform unskilled work, this is not at all clear on the current record.  Accordingly, a remand on this basis is warranted.[7]

---

[7] Since a remand is being required, the ALJ may similarly wish to explore further whether Brown's self-described need for long breaks during the day has a sound medical basis, since the vocational expert explained this would render her unemployable.

12

**II. Treating Physician**

Brown also takes issue with the ALJ's treatment of Dr. Studt's conclusion with respect to her upper body fine motor skills and strength. In doing so, Brown relies on the "treating physician" rule, which requires an ALJ "give greater weight to the opinion of the claimant's treating physician's assessment than to the opinion of a non-treating physician." *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1079 (7th Cir. 2012). The rule, however, is not absolute, particularly when there is contrary medical evidence in the record.

When an ALJ does discount or reject a treating physician's opinion, she "must provide a sound explanation" before doing so. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). That explanation must allow a reviewing court to conclude that the ALJ actually "weighed the merits of [a source's] opinion [and] engaged in the careful analysis required by the regulations and case law." *Id.* To properly frame the ALJ's analysis, the regulations provide a checklist of factors to facilitate his legal reasoning and explanation of the evidence. An explicit review of these factors helps determine what weight the ALJ affords to the medical opinions in the record and provides transparency in the ALJ's reasoning for judicial review. *See* SSR 06-3p and § 404.1527(c). These factors include: the length of the relationship and frequency of examination; the nature and extent of the relationship; how well the source supports his opinion (*i.e.*, with objective evidence and laboratory tests); how consistent the opinion is with the rest of the record; and whether the source is a specialist in the relevant area. 20 C.F.R. § 416.927(c).

Here, as detailed in the facts section above, the ALJ provided three sound bases for limiting the weight she was willing to assign Dr. Studt's opinion.  *First*, there is no indication in the report that Dr. Studt physically examined Brown; rather, he notes that "[w]e spent the appointment discussing her history and Activities of Daily Living."  (AR 346.) From this, the ALJ reasonably concluded that Dr. Studt's conclusions were "based primarily on claimant's subjective assertions of her functional limitations and not on an objective, physical examination or treatment relationship."  (AR 24.)  Indeed, as far as the court can tell Dr. Studt's only contact with Brown was this one-time meeting, based on a referral from Brown's actual treating physician, Dr. Kamal Thapar.  (AR 345.)

*Second*, the ALJ discounted Dr. Studt's opinion because it was inconsistent with Dr. Steiner's opinion, which took into consideration Brown's objective test results and medical records noting normal strength and gait.  While the ALJ's rejection of Dr. Studt's opinion solely because it was inconsistent with Dr. Steiner may have been insufficient, the ALJ drew a meaningful difference in the two physicians' consideration of Brown's objective test results and medical records.

*Third*, the ALJ relied on plaintiff's testimony about her fine motor skills and strength, including her ability to feed herself, brush her teeth, unlock doors, and put on eye make-up.  This, coupled with Dr. Steiner's testimony of a lack of objective medical evidence to support any fine motor restrictions, is further, good grounds for the ALJ to discount Dr. Studt's opinion.

For all these reasons, the court concludes that the ALJ provided a sound basis for limiting the weight given to Dr. Studt's opinion.

ORDER

IT IS ORDERED that:

1) the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Andrea L. Brown's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion; and

2) the clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 5th day of September, 2014.

BY THE COURT:


/s/
_____
WILLIAM M. CONLEY
District Judge